Good morning, Your Honors. Pamela Larry Tower on behalf of Michael Torres Jaimes. As a preliminary matter, Your Honors, I'd like to apologize for an error in the table of authorities in Appellant's opening brief. I have United States v. Davis cited as 922 F. 2nd, 1385 when it is 960 F. 2nd, 820, 1992, 9th Circuit Opinion, and it should be at page 18, not page 12. And if I may begin. Yes. There's four issues. Three of them are based upon sufficiency of the evidence vis-à-vis the trial. The fourth is based upon a challenge to criminal history calculation, which I may or may not get to. I believe that it's been sufficiently addressed in the briefs. My major concern, and would become moot if the court agrees with Appellant that there was insufficient evidence on any one of the three counts on which the jury convicted him. I believe it's a fair statement that opposing counsel and I agree that there's no dispute as to the facts at this trial and that the question here is purely one of legal sufficiency of the evidence. We've cited our relevant cases, and I think that the evidence here is susceptible of two interpretations, particularly with count one, the conspiracy count. However. Counsel, don't we have to give every inference in favor of the government if there are two ways in which this can be seen? Unfortunately, Your Honor, you do. And I still believe you almost given it away when you said there are two sides to this one. Well, there are two sides. I do know that years ago I used to ask for and get a circumstantial instruction out of the Fifth Circuit that permitted the inferences to favor the defendant if there were two reasonable interpretations of the evidence. And the Ninth Circuit doesn't permit that instruction. I think what I'm trying to say is that I. Did you submit that instruction? No, Your Honor. I haven't been able to submit it with success for a number of years. Well, you've got to keep trying. I did submit. And actually, it's interesting, this case. I did submit. Well, when I was a trial judge in the district court, I'd give it routinely. So I wasn't aware that it wasn't being given. No, the last time I was able to obtain that instruction, I believe, is back in 19. It might have been in Kinney's case with Mr. Bracco. 1997 or 98. And thereafter, I was never able to get it, so I didn't submit it. I should be. You didn't get a copy of it? Pardon me, sir? You didn't get a copy of it? No. Get it even agreed to by the courts, the district courts here. But you don't submit it? Not any longer, Your Honor. In this case, I did submit buyer-seller, also multiple conspiracy, and the government. And it was not Mr. Bracco who was trial counsel. It was Mr. Muelig. The government submitted, actually, a thorough and quite favorable instruction, sort of incorporating all of those arguments on buyer-seller, on single sales, things of that nature. We did have sufficient jury instructions, in my opinion, to cover all the issues in this case. The really difficult issue in a case such as this is that I have to ask a jury to acquit a drug dealer. And I think that that is really hard for jurors to do, even when they are properly instructed, which they were here, and even when the arguments went only to the facts, which was the testimony here. Even when the testimony here, in the opinion of Appellant, supports acquittals on all three counts, count one, count three, count four. Your argument, basically, is that he was just a purchaser, basically. He's a drug dealer, but he was a purchaser from this conspiracy. He wasn't a member of it. That's correct, Your Honor. But he's contacted and said, you know, we're running short of cocaine. Why don't you give a couple of pounds of it on two different occasions to this other seller? And he does, without charging money up front. It sure looks like he's in agreement with these people. The evidence shows that it was not Mr. Jimenez who initiated this. It was Mr. Casas. Mr. Casas, at the request of Mr. Ruiz Castro, said, well, let me see what I can do. Because Ruiz Castro was his, obviously, from Ruiz Castro's testimony, he was a huge seller of cocaine. And he was quite, quite successful, to the extent that he kept running out of cocaine. So Casas, in order to keep his conspiracy with Ruiz Castro going, is also dry. And he says, well, let me see if the other guy I sell to, who was unknown to Mr. Castro, has any cocaine. He has some cocaine. The agreement to front, for lack of a better word, the cocaine on those two occasions, was between Casas and Jimenez. In other words, Ruiz Castro. Certainly, Castro agreed. He got it. Well, Castro agreed with Casas that he needed cocaine and he would get it from anywhere. He did not know until this point in time that Casas actually had been distributing large amounts of cocaine to another cocaine dealer on the island. How can the jury assume that your client conspired with Casas? There could be a conspiracy with Casas. But I believe that the evidence showed only buyer-seller with Casas. The telephone calls are the most compelling evidence. Casas calls him up and says, lend two kilos of cocaine to Castro. How is that a buy by your client from Casas? Casas was responsible for paying my client, not Ruiz Castro. You mean your client becomes a seller to Casas? In essence, yes. He becomes a seller for Casas. Casas needs cocaine for Ruiz Castro. Casas doesn't have any, Ruiz Castro doesn't have any, but Michael Jaimes has some, as Casas finds out. It's interesting because Ruiz Castro, he doesn't say, here, here's the phone number, go call up Michael Jaimes. You know, you're on Maui. They're literally less than half an hour from each other. You know, you do it, right? It's all done through Casas because it's all very delicate. And the delicacy of that is an indication that there is, Michael Jaimes was doing his own thing. He was clearly doing his own thing, as was Ruiz Castro. These are all jury questions that were resolved against your client. And I believe that the jury was irrational in resolving them against my client. I think the evidence shows that on all counts. Sure. Thanks. May it please the court. My name is Lou Bracco, and I'm an assistant U.S. attorney. As Ms. Tower pointed out, I was not either trial counsel or appellate counsel. I'm standing in for Mr. Mulek, who since the brief was filed was activated. Now he's doing military duty, so he's unavailable. I can't hear you. Mr. Mulek, who wrote the brief and handled the trial and would normally be here today, was activated. So he's doing active military service. So I'm standing in for him. Where is he? Right now he's preparing to be deployed to Iraq, but he's presently still on some type of preparation here in Hawaii somewhere. I'm not sure where. But in any event, I'm fully familiar with the facts. I've read all the testimony of the two witnesses. And I would say that I think Judge Canby's remarks cut it straight to the quick. I mean, this appears to be a traditional real conspiracy with Casas at the spoke and then Jaimez and Ruiz-Castro on the rim. And they're connected. The dealings between Ruiz-Castro and Jaimez connect the conspiracy. And the question, Judge Canby, that you asked to Ms. Tower, I think go right to the heart of it because it's not a traditional buyer-seller, not only for all the other reasons about the prior dealings between the two, but because if it was a buyer-seller relationship, Jaimez gave the drugs to Ruiz-Castro on two occasions. So therefore, if it was a buyer-seller relationship, Ruiz-Castro would owe the debt to Jaimez. That would be the strictly buyer-seller where the buyer-seller are dealing at arm's length, which occasions require. But in this case, there was a sophisticated on-credit type of payment which shows the conspiracy because even though Jaimez gave the two kilos to Ruiz-Castro, the debt was insured or assumed by Casas at the mainland source. So it wasn't a buyer-seller between Jaimez and Ruiz-Castro. It was a conspiracy among the three. And not only, as you pointed out in your questions, was that the case on the front end, it was also a case on the back end because the evidence showed, and the only evidence in the case was the testimony of Ruiz-Castro because the defendant didn't provide any testimony and Casas was never called. So all the evidence was what Ruiz-Castro testified and the phone conversations which were introduced. And the plan that Ruiz-Castro testified was that he and Casas intended to repay Jaimez with two kilos when the next shipment came down. And that was, again, that was Casas' debt. So what happens is the six kilos come down, the courier gets taken off, and now the plan changes because now Jaimez is complaining. Hey, you know, I want my money. I want my money. Somebody's got to pay me. And Casas then tells Jaimez, I mean, Ruiz-Castro says, look, I can't pay him. I'm broke. My six kilos got taken off. I got some other, I lost some other kilos. I have this debt, but I can't pay him. You pay him. So on the back end, then, when Ruiz-Castro pays Jaimez, he's paying off Casas' debt, which is further evidence of a conspiracy because it involves Casas and it shows this extension of credit among the conspirators. So for all those reasons, Judge, we think that there's ample evidence of conspiracy. And as the court already pointed out, the case law requires that the evidence be viewed at this juncture in the light most favorable to the government. So unless the court has any questions, I'm prepared to. Thank you. Any rebuttal? No, Your Honor. Thank you. All right, matters stand submitted.
judges: B. Fletcher, Pregerson, Canby